IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| MARK A. GREEN and MARCIA GREEN, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: PWG-16-2572 |
| JENKINS SERVICES, LLC, *et al.*, | * | |
| Defendants | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

In January 2014, a fire completely destroyed Plaintiffs Mark and Marcia Green's ("the Greens") house. Fortunately, Marcia Green's USAA Casualty Insurance Company ("USAA") homeowners-insurance policy covered the couple's losses, but disagreements over a portion of the Greens' insurance payout resulted in this litigation. At USAA's urging, the Greens entered an agreement and a purported contract with Defendant Jenkins Services, LLC ("Jenkins") for their insurance proceeds to fund restoration of the damaged property. USAA issued a check for $127,437.48, which named Jenkins, Marcia Green, and her father, Mark Green's predecessor in interest, as payees. According to Jenkins, the Greens endorsed the check, which the LLC deposited in its bank account. After Jenkins razed the damaged structures on the property and performed other preparatory work, the Maryland State Department of Health and Mental Hygiene and State Department of Assessments and Taxation determined that the property could not sustain an on-site sewage disposal system, making reconstruction impossible. Nevertheless, Jenkins retained the money it had already collected. The Greens seek to recover that money

from Jenkins, alleging that a Jenkins employee forged their signatures on the check and, in any event, that they are entitled to the money under either breach-of-contract or unjust-enrichment theories. Jenkins disputes the forgery allegations and argues that it is entitled to the money to cover the cost of work it has already performed. Pending now is Jenkins's Motion for Judgment on the Pleadings. Def.'s Mot., ECF No. 31. Jenkins filed a Memorandum in support of its Motion, Def.'s Mem., ECF No. 31-2, and the Greens filed an Opposition, Pls.' Opp'n, ECF No. 54, but Jenkins never filed a Reply. No hearing is necessary. Loc. R. 105.6 (D. Md.). Because I find that the Greens have stated claims against Jenkins, I will deny the Motion.

**Background**

On January 15, 2014, a fire destroyed the Greens' home at 16631 Gardner Road in Waldorf, Maryland, rendering the dwelling uninhabitable. Am. Compl. ¶¶ 31–32, ECF No. 29. Prior to the fire, the property had been co-owned by Elijah Girven, Jr. and his daughter, Marcia Green. Am. Compl. ¶¶ 1–2, 4. After Girven's death, Marcia's spouse, Mark Green, acquired his father-in-law's interest in the property. *Id.* ¶ 5.

Marcia Green owned a homeowners-insurance policy through USAA. It insured the property and the buildings and personal property on it. *Id.* ¶¶ 28–30, 34; USAA Homeowners Policy, Am. Compl. Ex. 5, ECF No. 29-7. The Greens filed a claim with USAA, and the insurance company acknowledged that their claim was covered by the policy. *Id.* ¶ 35. USAA recommended that the Greens use Jenkins, one of its preferred contractors, to restore or reconstruct the damaged home. *Id.* ¶ 36. Wells Fargo Bank NA ("Wells Fargo"), which holds a mortgage on the Greens' property, agreed to hold the insurance proceeds in a restricted escrow account to be used for restoration or reconstruction or to reduce the couple's debt to the bank. *Id.* ¶¶ 8, 40–43. Subsequently, USAA made several insurance payments to the escrow account

and to the Greens.  *Id.* ¶¶ 44–45.  These payments included a check for $127,437.38, which named Jenkins, Marcia Green, and Elijah Girven, but not Mark Green, as payees.  *Id.* ¶¶ 81–82; Check, Am. Compl. Ex. 11, ECF No. 29-17.  The Greens allege that an unknown employee at Jenkins forged their signatures on the back of the check, endorsing it over to Jenkins.  *Id.* ¶ 89.

On February 2, 2014, the Greens signed an agreement with Jenkins, which authorized the contractor to make "necessary repairs to [the] property" and USAA "to name Jenkins Restorations along with [the insureds] on all drafts issued in regard to the insurance claim."  *Id.* ¶ 37, Authorization for Work: Repair Agreement & Assignment of Insurance Benefits, Am. Compl. Ex. 7, ECF No. 29-9 [hereinafter Authorization].  Although the Authorization mentions only "repairs" to the property, the Greens maintain that they intended all along for Jenkins to raze the damaged structures and construct a new house.  Am. Compl. ¶ 129.  They also allege that Mark Green informed Jenkins that the company would have to perform a percolation ("perc") test on the property before beginning construction work in order to determine whether the property could continue to support a septic system.  *Id.* ¶ 130.  A handwritten note appears on the Authorization with the words "septic" and "well" under the heading "P.G. County," a common shorthand for Prince George's County, Maryland.  Am. Compl. ¶ 133; Authorization, Am. Compl. Ex. 7.  The Greens allege that they signed the Authorization after Jenkins's agent, Bob Hoffman, informed Mark Green that a perc test was not necessary.  Am. Compl. ¶ 131.  On March 12, 2014, the Greens signed a Construction Contract with Jenkins that authorized the company to "perform . . . the scope of the work . . . in accordance with specifications set forth" in documents purportedly attached to the document for a contract price of $581,222.90 (subject to additions and deductions) and charging Jenkins with responsibility for "comply[ing] with applicable building codes and with all local requirements for building permits, inspections and

zoning." Contract ¶¶ 2, 5, Am. Compl. Ex. 8A, ECF No. 29-11; *see also* Am. Compl. ¶¶ 146, 148. The Greens contend that Jenkins never prepared a description of the scope of the work that it was to perform. Am. Compl. ¶ 154. The Contract stated that work would commence approximately on June 1, 2014, and would be substantially completed by January 15, 2015. *Id.* ¶ 149; Contract ¶ 4. It also set forth a progress payment schedule with an initial payment of $131,8762.19 due upon execution of the Contract. Contract ¶ 6. In addition, the Contract assigned the Greens' insurance proceeds to Jenkins, authorizing "direct payment of any such proceeds to Jenkins Restorations" and obligating the Greens to endorse any payments made to them by USAA over to Jenkins. *Id.* ¶ 7. Both Jenkins and the Greens contractually agreed to waive their right to recover "consequential damages arising out of the Contract." *Id.* ¶ 9.

Jenkins did not apply for a perc test with the Prince George's County Health Department until March 19, 2015, Am. Compl. ¶ 150; Percolation Test Application, Am. Compl. Ex. 15, ECF No. 29-21, and the Department administered the test on May 7, 2015, Am. Comp. ¶150; Percolation Test Report, Am. Compl. Ex. 16A, ECF No. 29-22. Based on the perc test, the Maryland State Department of Health and Mental Hygiene and State Department of Assessments and Taxation determined that the Greens' property was "unsuitable to support an on-site sewage disposal system," rendering the property off limits to development "until public sewerage facilities are made available." Letter from Manfred Reichwein, Chief, Envtl. Eng'g/Policy Program, Prince George's Cty., to Daniel Puma, Supervisor, Md. State Dep't of Assessments & Taxation (June 9, 2015), Am. Compl. Ex. 17, ECF No. 29-24; *see also* Am. Compl. ¶¶ 150, 163–64. Despite being unable to go forward with the construction, Jenkins kept the $127,437.38 to cover its costs associated with razing the damaged house and conducting preparatory work for the new construction. Am. Compl. ¶¶ 172, 182–83.

4

The Greens filed a Complaint in the Circuit Court for Prince George's County against Jenkins, its unknown employee who allegedly forged the couple's signatures, and the company's bank, TD Bank, as well as Wells Fargo and USAA. Compl., ECF No. 2. With the other Defendants' consent, Wells Fargo removed the case to this Court, Notice of Removal, ECF No. 1.[1] The Greens voluntarily dismissed TD Bank from the case, ECF No. 72, and reached a settlement with Wells Fargo and USAA, ECF No. 74. The remaining claims against Jenkins include fraud (Count I);[2] conversion and misappropriation; (Count II), conversion of a negotiable instrument (Count IX), breach of contract (Count XI), and money had and received (Count XII). Am. Compl. ¶¶ 216–33, 265–69, 281–303. Jenkins filed an Answer to the Amended Complaint, ECF No. 30, along with the pending Motion.

## Standard of Review

Courts apply "the same standard for Rule 12(c) motions [for judgment on the pleadings] as for motions made pursuant to Rule 12(b)(6)," alleging failure to state a claim. *Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). That rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the

---

[1] Wells Fargo removed on the basis of both federal-question jurisdiction and diversity jurisdiction. Notice of Removal ¶¶ 5–6. The basis for federal-question jurisdiction was the Greens' Truth in Lending Act claim against Wells Fargo. *Id.* ¶ 5. Although the Greens have reached a settlement with Wells Fargo, the Court may still exercise supplemental jurisdiction over the remaining claims against Jenkins. 28 U.S.C. § 1367. Moreover, the Court possesses diversity jurisdiction over the case, as more than $75,000 is at issue and the Greens are citizens of Maryland while Jenkins is a North Carolina LLC, whose sole member is another North Carolina LLC whose members are North Carolina citizens. Def. Wells Fargo's Resp. to Standing Order on Removal ¶ 3, ECF No. 20; *see also Jennings v. HCR Manorcare Inc.*, 901 F. Supp. 2d 649, 651 (D.S.C. 2012) ("For the purposes of diversity jurisdiction, the citizenship of a limited liability corporation is determined by the citizenship of all of its members. Thus, an LLC's members' citizenship must be traced through however many layers of members there may be." (citations omitted)).

[2] The Greens also allege the fraud claim against the unidentified Jenkins employee. Am. Compl. ¶¶ 216–25.

5

facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.' " *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)).

When reviewing a motion for judgment on the pleadings, I "may consider documents attached to the complaint, as well as documents attached to the motion . . . , if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written

instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Consideration of documents that the plaintiff references and relies upon does not convert a motion to dismiss into a motion for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Greens attached and make reference to numerous documents in their Amended Complaint. Accordingly, I will consider those documents in ruling on Jenkins's Motion.

### Choice of Law

"In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Greens' claims against Jenkins are common-law claims that sound in tort and contract. Throughout their briefing, both parties cite Maryland law, so that is the law that I will apply.

Moreover, Maryland courts adhere to the doctrine of *lex loci delicti* when determining the law that governs tort claims, meaning the law of the state where the injury occurred applies. *Lewis v. Wletzky*, 31 A.3d 123, 129 (Md. 2011). The Greens are citizens and residents of Maryland, and the property is in Maryland. Accordingly, any injury that they suffered as a result of being deprived of their homeowners-insurance proceeds was suffered in this state.

Maryland courts also apply the doctrine of *lex loci contractus*, which "requires that, when determining the construction, validity, enforceability, or interpretation of a contract, [courts] apply the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 107 A.3d 310, 326 (Md. 2015). Additionally, Maryland will enforce contractual parties' choice of law unless "the chosen state has no substantial relationship to the parties or the transaction and

there is no reasonable basis for the parties choice" or applying the chosen law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Nat'l Glass, Inc. v. J.C. Penney Properties, Inc.*, 650 A.2d 246, 248 (Md. 1994) (quoting Restatement (Second) Conflict of Laws § 187(2) (1971)). The purported contract between Jenkins and the Greens selects Maryland law as the governing law for claims arising out of the Contract. Contract ¶ 16.c. And insofar as the Greens challenge the enforceability of the Contract, it appears that the place where the parties attempted to make the contract was Maryland, as the Contract provides a Maryland address for both Jenkins and the Greens. Contract 1.

## Discussion

### Count I: Fraud

Under Maryland law, the elements of fraud are:

(1) that a representation made by the respondent was false; (2) that its falsity was known to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation, but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (5) that the plaintiff suffered damage (meaning an injury subject to being redressed by compensatory damages) directly resulting from the respondent's misrepresentation.

*Crawford v. Mindel*, 469 A.2d 454, 458 (Md. 1984) (quoting *James v. Weisheit*, 367 A.2d 482, 484 (Md. 1977).

Jenkins's Motion largely does not address any pleading deficiencies. Rather, the contractor argues that it is entitled to judgment on the pleadings as to the fraud claim by inviting the Court to conclude that the signatures on the back of the disputed check match the Greens' signatures on other documents. Def.'s Mot. ¶¶ 12–20; Def.'s Mem. 3. But rendering a judgment

on the similarity or dissimilarity of signatures would require me to make a factual determination, which I may not do at this juncture of the case.

In addition, Jenkins contends that it could not have committed fraud by forging the Greens' signatures because the Authorization and Contract assigned the Greens' insurance proceeds to the contractor. Def.'s Mot. ¶ 21; Def.'s Mem. 4. In other words, Jenkins views the Greens' signatures as completely superfluous because the couple had already waived their right to exercise control over their insurance proceeds. I take this to be an argument that the Greens could not have suffered damage as a result of the alleged forgery since the insurance proceeds had already been assigned to Jenkins. *See Crawford*, 469 A.2d at 458. Assuming for the moment that the Contract is enforceable, the document's assignment provision is more nuanced than Jenkins would have it seem.[3] Although the provision authorized "direct payment" of USAA insurance proceeds to Jenkins, it also required the Greens to "endorse over to Jenkins" payments made directly to them. Contract ¶ 7. Jenkins' discussion of the provision completely elides the specific role envisioned for the Greens to endorse checks paid to them. Perhaps Wells Fargo had the authority under the Contract to release funds from the escrow account directly to Jenkins, but that does not appear to be what the bank did. Instead, it issued a check that named Jenkins and the insureds as payees. *See* Check, Am. Compl. Ex. 11. Although the Contract does not delineate specific procedures for payments issued to both Jenkins and the insureds, its specific language concerning payments made directly to the Greens prevents me from concluding that the assignment provision somehow empowered Jenkins to deposit a check into its account without

---

[3] Although the Authorization is subtitled an "Assignment of Insurance Benefits," the document's body does not appear to contain any language assigning proceeds or specifying assignment procedures. The closest the document comes to assigning insurance proceeds is an authorization for USAA to "name Jenkins Restorations along with [the insureds] on all drafts issued in regard to this insurance claim." Authorization, Am. Compl. Ex. 8.

9

endorsements from its co-payees. Thus, Jenkins is not entitled to judgment on the pleadings regarding Count I.

### Count XI: Breach of Contract

If the Greens entered into an enforceable contract with Jenkins, they allege that the company materially breached its obligations by failing to obtain a permit to raze the damaged structures until November 2014; by failing to promptly secure a perc test but going forward with preparatory work nonetheless; and by failing to substantially complete the construction by January 2015. Am. Compl. ¶¶ 288–89. As damages, the Greens seek to recover the $127,438.38 paid out of the escrow account to Jenkins and an additional $400,000 in unspecified "direct damages." *Id.* ¶¶ 291–92.

Jenkins argues that the Greens' breach-of-contract claim fails because the parties entered the Contract too late in the year for a perc test to be administered and that it had to wait until Spring 2015 to perform the test. Def.'s Mot. ¶ 25; Def.'s Mem. 9–10. In support of its argument, Jenkins attaches to its Motion an email from a Prince George's County employee that provides dates for the 2014 and 2015 "wet seasons" during which the County performs perc tests. Email from Manfred Reichwein, Chief, Envtl. Eng'g/Policy Porgram, Prince Goerg's Cty. Health Dep't, to Mark Hardcastle (Aug. 9, 2016, 4:10 P.M.), Def.'s Mot. Ex. 3, ECF No. 31-1.[4]

---

[4] Jenkins asks that I take judicial notice of this email pursuant to Fed. R. Evid. 201(b)(2). Def.'s Mot. ¶ 25. A court may take judicial notice of "relevant facts from the public record at the pleading stage" so long as it "construe[s] such facts in the light most favorable to the plaintiff." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). But I have serious doubts about whether I may take judicial notice of the email. To do so, I would have to find that the facts it contains were generally known within the court's "territorial jurisdiction" (so-called "notorious" facts) or are capable of being accurately and readily determined from "sources whose accuracy cannot reasonably be questioned" (so-called "reliable" facts). Fed. R. Evid. 201(b)(1)–(2). Jenkins does not explain how either factor can be ascertained by merely examining the email. But even if I were to take judicial notice of the email, it would not alter the result with regard to Count IX, for the reasons I will explain.

The email states that the "wet season" ran from February 18, 2014, until May 2, 2014 and from March 10, 2015, until May 8, 2015. *Id.* Since the Greens signed the Contract with Jenkins on May 12, 2014, Contract 8, Jenkins's position is that it could not have obtained a perc test of the property until March 10, 2015, at the earliest, Def.'s Mot. ¶ 25.[5] Jenkins applied for a perc test on March 19, 2015, Percolation Test Application, Am. Compl. Ex. 15. Thus, Jenkins argues that it did promptly arrange for a perc test. And since the property's failure to pass the perc test resulted in Jenkins's inability to move forward with the construction, *see* Letter from Manfred Reichwein, to Daniel Puma, Am. Compl. Ex. 17, Jenkins raises the defense of impossibility, Def.'s Mem. 10; *see also Baltimore Luggage Co. v. Ligon*, 118 A.2d 665, 671 (Md. 1955) ("Impossibility of performance may occur in law where the promisor has not deliberately agreed to do an illegal act and the law at the time of the performance is required forbids its doing.").

But the Greens contend that Jenkins "[i]n the alternative to utilizing the County's services, Jenkins could have hired an engineer to perform a septic and well study at any time, which engineer's findings could have been presented to Prince George's County in connection with the permitting process." Am. Compl. ¶ 158. Drawing all inferences in favor of the non-movant, as I must at this stage of the litigation, it is possible that Jenkins could have arranged for a perc test prior to March 2015 and therefore avoided incurring expenses associated with preparing the property for and planning the construction. Accordingly, Jenkins is not entitled to judgment on the pleadings on Count XI.[6]

---

[5] Jenkins also argues that, pursuant to a document entitled "Description of Work," which was not attached to the Amended Complaint, the company had to raze the damaged structures on the property before arranging a perc test. Def.'s Mot. ¶ 24. As this document is not incorporated in the pleadings, I cannot consider this argument.

[6] Jenkins also argues that the Greens cannot recover the $400,000 in additional unspecified damages beyond the money paid to the contractor out of the Wells Fargo escrow account because the Contract bars recovery of consequential damages. Def.'s Mot. ¶ 26; *see also*

Count XII: Money Had and Received

As an alternative to their breach-of-contract claim, the Greens also plead a money-had-and-received claim. Am. Compl. ¶¶ 293–303. The Maryland Court of Appeals has characterized such claims as unjust-enrichment claims rooted in a quasi-contract theory. *See Alternatives Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*, 843 A.2d 252, 288, 290 (Md. 2004). A quasi-contract is a "[l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where the circumstances are such that justice warrants a recovery as though there had been a promise." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000) (quoting *Black's Law Dictionary* 324 (6th ed. 1990)).

The Amended Complaint alleges that no enforceable contract existed between the parties because the Contract failed to define the scope of work that Jenkins was to perform. Am. Compl. ¶ 299. For a contract to be enforceable, "[i]t must not leave a material and essential term or element for future negotiation and settlement." *Yerki v. Salisbury*, 287 A.2d 498, 501 (Md. 1972). In the Contract, Jenkins promised to perform the scope of work . . . in accordance with the specifications set forth in the Contract Documents," enumerated in the Contract's first paragraph. Contract ¶ 2. These documents include a "Description of Work," Contract ¶ 1, which the Greens claim Jenkins never prepared, Am. Compl. ¶ 296. Jenkins does not dispute that the scope of work is a material term to a construction contract, and my independent research

---

Contract ¶ 9. But the Amended Complaint characterizes the $400,000 as "direct," not consequential damages. Am. Compl. ¶ 292. The Greens' Fed. R. Civ. P. 26(a)(1(A)(iii) disclosures do little to clarify matters, although some of damages specified appear to include consequential damages. *See* Pls.' Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii) 2, ECF No. 45 (claiming $53,292.00 in damages for "loss of use of home, and loss of additional living expenses"). Given the Amended Complaint's barebones description of these damages, I am unable to determine to what extent the Greens seek damages barred by the Contract.

has identified no Maryland case law to the contrary. But Jenkins argues that it did prepare a Description of Work and that the Greens attached it to the Amended Complaint at Exhibit 8. Def.'s Mem. 6.  But the document to which Jenkins refers does not appear to set forth the work that Jenkins promised to perform; rather it bears the hallmarks of an insurance assessment. *See* Am. Compl. Ex. 8, ECF No. 29-10.  The document—prepared by USAA, not Jenkins—contains detailed tables with rows listing various components of the house and columns with headings titled "RCV," "DEPREC.," and "ACV," which I take to stand for "Replacement Cost Value," "Depreciation," and "Actual Cash Value" respectively. *Id.*  Thus, I infer this document to be USAA's assessment of the amount of insurance proceeds to which the Greens were entitled, not Jenkins's description of the work it intended to perform.  Accordingly, the Greens have successfully pleaded the absence of a material contract term and may attempt to prove their entitlement to a quasi-contract remedy.

## Counts II and IX: Conversion

Counts II and IX of the Amended Complaint both allege that Jenkins committed the tort of conversion by depositing the Greens' insurance proceeds in its bank account.  Am. Compl. ¶¶ 226–33, 265–69.  Conversion is "the wrongful exercise of dominion by one person over the personal property of another." *Medi-Cen Corp. of Md. v. Birschbach*, 720 A.2d 966, 969 (Md. 1998) (quoting *Kalb v. Vega*, 468 A.2d 676 (1983)).  Thus, the Greens' conversion claims rise and fall on their ability to prove their other three claims against Jenkins, because Jenkins exercised no wrongful dominion over the disputed funds if no forgery occurred and if it was entitled to funds under an enforceable contract (or if it would not be unjust for the LLC to keep the funds in the absence of an enforceable contract).

Jenkins raises the affirmative defenses of justification and privilege to the conversion claims. Def.'s Mem. 4–5 (citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200 (1985)). A motion for judgment on the pleadings

> which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . . But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by [such a motion]. This principle only applies, however, if all the facts necessary to the affirmative defense "clearly appear[] *on the face of the complaint.*"

*See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (discussing courts' ability to rule on affirmative defenses raised in a motion to dismiss). For the reasons set forth in discussing the Greens' other claims, it is not possible to determine whether Jenkins had the privilege or was justified in keeping the disputed funds on basis of facts that appear on the face of the Amended Complaint. Thus, I cannot rule on Jenkins's affirmative defenses, and the Greens may attempt to prove their conversion claims.

## **ORDER**

Accordingly, it is this 10th day of April, 2017, by the United States District Court for the District of Maryland, hereby ORDERED that Defendant Jenkins Services, LLC's Motion for Judgment on the Pleadings, ECF No. 31, IS DENIED.

/S/
Paul W. Grimm
United States District Judge

jlb